United States District Court
Southern District of Texas
**ENTERED**
July 11, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| QBE SPECIALTY INSURANCE<br>COMPANY and TOKIO MARINE<br>UNDERWRITING LIMITED,<br><br>        Plaintiffs,<br><br>v.<br><br>EDURO HEALTHCARE, LLC,<br><br>        Defendant. | § § § § § § § § § § § | CIVIL ACTION NO. H-23-2626 |

## MEMORANDUM OPINION AND ORDER

In this insurance dispute, the parties disagree whether damage caused by a tornado is covered by their policy.[1]  Pending before the court are Plaintiffs' QBE Specialty Insurance Company and Tokio Marine Underwriting Limited's Motion for Summary Judgment ("Plaintiffs' MSJ") (Docket Entry No. 20) and Eduro Healthcare, LLC's Motion for Summary Judgment Against Plaintiffs QBE Specialty Insurance Company and Tokio Marine Underwriting Limited ("Defendant's MSJ") (Docket Entry No. 22).  Because the policy unambiguously limits coverage to damage caused by Named Storms and because the tornado at issue was not a Named Storm, Plaintiffs' MSJ will be granted, and Defendant's MSJ will be denied.

---

[1]Complaint for Declaratory Judgment ("Complaint"), Docket Entry No. 1, p. 1 ¶ 2.  For purposes of identification all page numbers reference the pagination imprinted at the top of the page by the court's Electronic Case Filing system.

## I.  **Background**

Eduro Healthcare, LLC ("Defendant") purchased an insurance policy from QBE Specialty Insurance Company and Tokio Marine Underwriting Limited (collectively, "Plaintiffs") for commercial property coverage for the period from February 15, 2022, to February 15, 2023 ("the Policy").[2]  The Policy consists of some preliminary regulatory notices, a Declaration Page, a Standard Property Policy ("SP Policy"), and a series of endorsements.[3]  The Declaration Page states the parties, the term of coverage, the type of coverage (commercial property), and the premium.[4]  The SP Policy states that Plaintiffs "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss."[5]  It lists the Covered Causes of Loss as fire, lightning, explosion, and if added, windstorm or hail, smoke, aircraft or vehicles, riots or civil commotion, sinkhole collapse, volcanic action, vandalism, and sprinkler leakage.[6]  However the Specified Perils Exclusion Endorsement ("SPE Endorsement") deletes from the

---

[2]Policy, Exhibit A to Defendant's MSJ, Docket Entry No. 22-1, p. 7; Complaint, Docket Entry No. 1, p. 2 ¶ 2.

[3]Policy, Exhibit A to Defendant's MSJ, Docket Entry No. 22-1, pp. 2-8.

[4]Id. at 7.

[5]Id. at 168 ¶ A.

[6]Id. at 170-171 ¶¶ A.3.a.-A.3.k.

-2-

SP Policy all the Covered Causes of Loss except Item A.3.d. —
windstorm or hail.[7]  Moreover, Endorsement 1 limits windstorm or
hail coverage to instances caused by a Named Storm:

> Item A.3.d. of Form CP 00 99 "Standard Property Policy"
> is deleted in its entirety and replaced with the
> following:

> A.3.d. Winstorm or Hail caused by or resulting from
> Named Storm[.][8]

Another part of the Policy, the Property Endorsement, states that
"[t]he term 'Named Storm' shall include, but not be limited to,
storm, cyclone, typhoon, atmospheric disturbance, depression or
other weather phenomena designated by the US National Hurricane
Center [("NHC")] and where a name (and not only a number) has been
applied."[9]

The parties agree that on January 24, 2023, a tornado damaged
Defendant's insured commercial property.[10]  Defendant filed a claim
under the Policy.[11]  Plaintiffs responded that because the damage

---

[7]Id. at 167.  The SPE Endorsement is marked with the
endorsement number "SP 05 98," and its name is listed in the
Policy's Schedule of Forms and Endorsements.  Id. at 8, 167.

[8]Id. at 9 ¶ 8.

[9]Id. at 33 ¶ H.  The Property Endorsement begins by stating:
"WITH RESPECT TO THE COVERAGE PROVIDED BY ALL UNDERWRITERS,
CARRIERS AND INSURERS OF THIS POLICY, THE FOLLOWING CLAUSES SHALL
APPLY." Id. at 20.

[10]Plaintiffs' MSJ, Docket Entry No. 20, p. 10 ¶ 12; Defendant's
MSJ, Docket Entry No. 22, p. 6.

[11]Property Loss Notice, Exhibit E to Plaintiffs' MSJ, Docket
(continued...)

was not caused by a Named Storm, it was not covered.[12] Plaintiffs filed this action seeking a declaratory judgment that the damage was not covered under the Policy.[13] Defendant filed counterclaims for breach of contract and violations of the Texas Insurance Code for failure to timely investigate the claim and failure to timely pay the claim.[14] The parties filed their cross-motions for summary judgment, responded, and replied.[15] Plaintiffs seek a declaration that the Policy does not cover damage caused by the January 24, 2023, tornado and summary judgment against Defendant's counterclaims.[16] Defendant seeks summary judgment against

---

[11] (...continued)
Entry No. 20-5, p. 2.

[12] February 3, 2023, Correspondence, Exhibit G to Defendant's MSJ, Docket Entry No. 22-7, p. 2.

[13] Complaint, Docket Entry No. 1, p. 5 ¶ A.

[14] Eduro Health Care, LLC's Answer to Plaintiff's Complaint for Declaratory Judgment and Original Counterclaim, Docket Entry No. 13, pp. 11-12.

[15] Plaintiffs' MSJ, Docket Entry No. 20; Eduro Healthcare, LLC's Response to Plaintiffs QBE Specialty Insurance Company and Tokio Marine Underwriting Limited's Motion for Summary Judgment, Docket Entry No. 21; Plaintiffs' QBE Specialty Insurance Company and Tokio Marine Underwriting Limited's Reply in Support of Plaintiffs' Motion for Summary Judgment, Docket Entry No. 23; Defendant's MSJ, Docket Entry No. 22; Plaintiffs' QBE Specialty Insurance Company and Tokio Marine Underwriting Limited's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 24; Eduro Healthcare, LLC's Reply in Support of Its Motion for Summary Judgment Against Plaintiffs QBE Specialty Insurance Company and Tokio Marine Underwriting Limited, Docket Entry No. 25.

[16] Plaintiffs' MSJ, Docket Entry No. 20, p. 22 (Prayer).

-4-

Plaintiffs' declaratory judgment claim and in favor of its counterclaims.[17]

## II. **Legal Standard**

### A.   **Texas Contract Law**

Texas courts "interpret insurance policies . . . according to the rules of contract construction." American Manufacturers Mutual Insurance Co. v. Schaefer, 124 S.W.3d 154, 157 (Tex. 2003). "The goal of contract construction is to ascertain the parties' intent as expressed in the language of the agreement." Rosetta Resources Operating, LP v. Martin, 645 S.W.3d 212, 218 (Tex. 2022). "If the language lends itself to a clear and definite legal meaning, the contract is not ambiguous and will be construed as a matter of law." Great American Insurance Co. v. Primo, 512 S.W.3d 890, 893 (Tex. 2017). "[A] contract is ambiguous only when the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning." RSUI Indemnity Co. v. The Lynd Co., 466 S.W.3d 113, 119 (Tex. 2015).

"[C]ourts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983) (emphasis omitted). But "'[a]lthough interpreting an insurance policy to give a reasonable meaning to all provisions is preferable to interpreting the policy

---

[17]Defendant's MSJ, Docket Entry No. 22, pp. 23-24 ¶ VII.

in a way that creates surplusage or leaves a portion of the policy useless or inexplicable, surplusage alone does not make an insurance policy ambiguous.'" <u>U.S. Fire Insurance Co. v. Scottsdale Insurance Co.</u>, 264 S.W.3d 160, 167 (Tex. App.—Dallas 2008) (quoting <u>Grain Dealers Mutual Insurance Co. v. McKee</u>, 943 S.W.2d 455, 458 (Tex. 1997)).  In weighing the significance of surplusage, the Texas Supreme Court has distinguished "unique contract[s] tailor-made to the interests peculiar to each party" from insurance policies that include "standard forms crafted to accommodate a wide variety of insurance needs." <u>See</u> <u>McKee</u>, 943 S.W.2d at 458.  "Elections made by the insured may invoke or render inert various provisions of insurance policy endorsements." <u>Id.</u>

**B.   Summary Judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party asserting that a fact is or is not genuinely disputed must support the assertion by "citing to particular parts of materials in the record[.]" Fed. R. Civ. P. 56(c)(1)(A). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case[.]" <u>Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548, 2552 (1986).  "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district

-6-

court—that there is an absence of evidence to support the nonmoving party's case." Id. at 2554.

"Summary judgment is proper if there's no genuine dispute over the meaning of the parties' contract, as when that contract is unambiguous." In re GenOn Mid-Atlantic Development, L.L.C., 42 F.4th 523, 541 (5th Cir. 2022). "However, if a contract's terms are ambiguous, summary judgment is generally inappropriate." Tekelec, Inc. v. Verint Systems, Inc., 708 F.3d 658, 664 (5th Cir. 2013).

## C.   Declaratory Judgment

"In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . . Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a).

## III.  **Analysis**

Plaintiffs argue that the Policy unambiguously limits coverage to damage caused by Named Storms and that the tornado does not meet the Policy's definition of a Named Storm.[18]  Defendant argues that the Policy is ambiguous as to the scope of coverage for several reasons.  Defendant argues (1) that the Policy uses "inconsistent and contradictory language which creates an illogical patchwork of

---

[18]Plaintiffs' MSJ, Docket Entry No. 20, p. 12 ¶¶ 21.

incongruous and thus ambiguous coverage[,]"[19] (2) that "the definition [of a Named Storm] does not appear in or apply to Endorsement 1,"[20] (3) that "coverage is illusory" because the NHC "only gives actual names to [cyclones] and not the other storms enumerated in the definition,"[21] and (4) that the restriction to storms designated by the NHC applies only to part of the Named Storm definition.[22]  In the alternative, Defendant argues that the tornado was a Named Storm.[23]

**A.   Whether the Policy's Structure Makes It Ambiguous**

Defendant appears to argue that the Policy's coverage definition is so convoluted as to be ambiguous, emphasizing that the Policy lists eleven Covered Causes of Loss in one document (the SP Policy), deletes ten of them in a separate endorsement (the SPE Endorsement), and replaces the last cause in yet another endorsement (Endorsement 1).[24]  This multi-step coverage definition requires more reading, but Defendant cites no authority suggesting that such a structure can amount to ambiguity.  Nothing in the SPE Endorsement or Endorsement 1 casts doubt on the plain language deleting and replacing the original scope of coverage.  Instead the

---

[19]Defendant's MSJ, Docket Entry No. 22, p. 11.

[20]Id. at 10 ¶ 1.

[21]Id. ¶ 2.

[22]Id. ¶ 3.

[23]Id. at 17.

[24]Id. at 11-13.

court is persuaded that when read in combination, the SP Policy, the SPE Endorsement, and Endorsement 1 make clear that the only Covered Cause of Loss is Item A.3.d as redefined in Endorsement 1, i.e. windstorms or hail caused by a Named Storm.

Defendant argues that Plaintiffs' interpretation would create surplusage, citing several provisions that refer to storms that would be covered by the SP Policy alone but that are excluded by the Endorsement 1's Named Storm requirement.  Defendant cites the CAT Covered Property Endorsement ("the CAT Endorsement"), which states that "[a]s respects the Perils of Hurricane, Windstorm and Hail, the following is added to A.2 Property Not Covered in [various endorsements]," and the endorsement lists some categories of property that are and are not covered.[25]  Defendant cites the Contract Allocation Endorsement, which allocates risk between Plaintiffs.[26]  The endorsement includes a key with shorthand symbols for 19 causes of loss, but the only symbol listed in the risk allocation is "NW" (Named Windstorm).[27]  Defendant cites the Values Per Location Windstorm or Hail Percentage Deductible, an endorsement that states that a 3 percent deductible "applies

---

[25]Policy, Exhibit A to Defendant's MSJ, Docket Entry No. 22-1, p. 14.

[26]Id. at 11.

[27]Id. at 11-12.

-9-

whenever there is an occurrence of Windstorm or Hail" but does not mention Named Storms or Named Windstorms.[28]

These endorsements may contain language that is partially "render[ed] inert" by the Policy's reduced scope of coverage.  See McKee, 943 S.W.2d at 458.  But the purpose of these documents is to define what property is covered, allocate risk, and impose a deductible; none of the cited language purports to define which causes of loss are covered by the Policy.  And none of the language conflicts with the reduced scope of coverage.  The inert language cited by Plaintiff does not make the coverage ambiguous.

B.  **Whether the Named Storm Definition Applies to Endorsement 1**

Defendant argues that the definition of a Named Storm applies only to the Property Endorsement and that the words "Named Storm" in Endorsement 1 should therefore be given their ordinary meaning.[29] But the Property Endorsement states that its clauses, which include the Named Storm definition, "SHALL APPLY" "WITH RESPECT TO THE COVERAGE PROVIDED BY ALL UNDERWRITERS, CARRIERS AND INSURERS OF THIS POLICY[.]"[30]   There is no language in the Named Storm definition to suggest that it does not apply to the whole Policy. Moreover where a definition applies to a single endorsement instead of the whole Policy, the Policy says so explicitly.  The CAT Endorsement, for example, prefaces its definitions with the

---

[28]Id. at 65.

[29]Defendant's MSJ, Docket Entry No. 22, p. 10 ¶ 1.

[30]Policy, Exhibit A to Defendant's MSJ, Docket Entry No. 22-1, p. 20.

language: "As used in this endorsement these words have the following meaning[.]"[31] The court concludes that the Named Storm definition unambiguously applies to the entire Policy.

## C.   **Whether the Named Storm Definition Makes Coverage Illusory**

Defendant argues that "the coverage is illusory as to all weather events other than cyclones" because "the [NHC] only gives actual names to [cyclones] and not the other storms enumerated in [the Named Storm] definition[.]"[32] "'Texas disfavors constructions of insurance contracts that render all coverage illusory.'" Balfour Beatty Construction, L.L.C. v. Liberty Mutual Fire Insurance Co., 968 F.3d 504, 515 (5th Cir. 2020). But coverage is generally not illusory so long as the policy would provide coverage for other claims. Id. Because the Policy would cover damage caused by a tropical cyclone that had been designated and named by the NHC, coverage is not illusory.

Even if the Named Storm's list of weather phenomena contains some types of storms that are currently not designated by the NHC and given names, this would not be sufficient to create an ambiguity. The language limiting Named Storms to those designated by the NHC and given a name, combined with the fact that the words "Named Storm" imply a naming requirement, is so plain that it cannot plausibly be read any other way.

## D.   **Whether the NHC Naming Requirement Applies to All Storms**

[31]Id. at 17.

[32]Defendant's MSJ, Docket Entry No. 22, p. 10 ¶ 2; see also id. at 19-20.

Defendant argues that the NHC naming requirement applies only to the last category of storm listed — other weather phenomena.[33] But the text gives no indication that the naming requirement is so limited. As Plaintiffs point out, "'when several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all.'" Paroline v. United States, 134 S. Ct. 1710, 1721 (2014).[34] Although the court does not perceive any ambiguity in the Named Storm definition, the words "Named Storm" reinforce the conclusion that the naming requirement applies to all covered storms.

The court concludes that the Policy unambiguously limits coverage to "[w]indstorm[s] or hail caused by or resulting from Named Storm[s]," that the Property Endorsement's Named Storm definition applies, and that the Named Storm definition unambiguously limits coverage to storms that are designated by the NHC and given a name.

**E.   Whether the "Pasadena Tornado" Was a Named Storm**

Defendant does not argue that the tornado was named by the NHC or caused by an NHC-named storm. Instead Defendant argues that the tornado qualifies as a Named Storm because "the tornado was widely referred to as the 'Pasadena Tornado' by the local media" and

---

[33]Id. ¶ 3.

[34]See also id. ("[C]atchall clauses are to be read as bringing within a statute categories similar in type to those specifically enumerated.").

because the Small Business Administration identified the tornado as "Texas Disaster Number TX-00647."[35]  This argument depends on the premise that the Policy's Named Storm definition or its NHC naming requirement does not apply and therefore fails.  Moreover this argument underlines the implausibility of Defendant's preferred meaning.  It would be very surprising for parties to a property insurance contract to intend that coverage would depend on how local media happened to describe a storm instead of the NHC's objective classification criteria, which are publicly and specifically defined in advance.

## IV.  Conclusion and Order

Because it is undisputed that the January 24, 2023, tornado was not designated or named by the NHC, the court concludes that it was not a Named Storm as defined in the Policy.  Because the tornado was neither a Named Storm nor caused by a Named Storm, the Policy provides no coverage for the damage to Defendant's property. Plaintiffs' QBE Specialty Insurance Company and Tokio Marine Underwriting Limited's Motion for Summary Judgment (Docket Entry No. 20) is therefore **GRANTED,** and Eduro Healthcare, LLC's Motion for Summary Judgment Against Plaintiffs QBE Specialty Insurance Company and Tokio Marine Underwriting Limited (Docket Entry No. 22) is **DENIED**.  The court will enter a declaratory judgment stating that the Policy provides no coverage for damage caused by the

---

[35]Defendant's MSJ, Docket Entry No. 22, pp. 17-18.

January 24, 2023, tornado and enter a take-nothing judgment on
Defendant's counterclaims.

     **SIGNED** at Houston, Texas, on this 11th day of July, 2024.

_____
                    SIM LAKE
       SENIOR UNITED STATES DISTRICT JUDGE